IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:05-CT-741-BO

**FILED**

*JUL* **0 9** 2008

DENNIS P. IAVARONE, CLERK
US DISTRICT COURT, EDNC
BY _____ DEP CLK

RONALD DEMOND BOYKIN,          )
                 Plaintiff,              )
                                         )
v.                                       )          **ORDER**
                                         )
EURGIA CHARLES LAND, M.D.,      )
                 Defendant.              )

　　Ronald Demond Boykin ("plaintiff"), an inmate, filed this action asserting claims under both

42 U.S.C. § 1983 and state law medical malpractice. On June 14, 2007, the court allowed

defendant's motion to dismiss the state law claims for failure to comply with Rule 9(j) of the North

Carolina Rules of Civil Procedure, but denied defendant's motion based on dismissal for failure to

exhaust and the failure to allege an injury. Now before the court is defendant's motion for summary

judgment based on qualified immunity to which plaintiff responded as well as filing his own

summary judgment motion. The matters are ripe for determination.

　　Plaintiff contends that on October 1, 2002, he sustained back and head injuries due to a

prison van collision. (Compl. ¶ IV.) He asserts he has not received proper medical care and seeks

8 million dollars in damages. (Compl. ¶ IV and V)

　　On April 13, 2004, Boykin was transferred to Piedmont Correctional Institution ("PCI").

(Affidavit Land ¶ 4) It is in this institution where Boykin was treated by Dr. Land, the unit

physician. (Id.) Immediately upon arriving at PCI, Boykin filed out a sick call request to see the

doctor for pain. (Id. ¶ 5) The triage nurse noted Boykin's statement that at a prior camp he had been

denied an appointment with a specialist. The triage nurse also noted a prior visit with a physical

therapist who documented malingering and negative results from x-rays. (Id.)

On or about May 5, 2004, Dr. Land reviewed Boykin's medical chart and sick call requests in which Boykin complained of back pain and difficulty in climbing up to the top bunk. (Id. ¶ 6) A review of this nature is customary and routine practice for new transfers at PCI. Because Dr. Land's initial examination appointment with Boykin was not scheduled until May 14, 2004, he ordered a bottom bunk for Boykin for six months in an effort to relieve discomfort prior to the examination. (Id. ¶ 6) Based on the review of the medical records, Dr. Land knew that Boykin had not been receiving medication for his back complaints since May 5, 2003. (Id. ¶ 7 n.1)

On or about May 14, 2004, Dr. Land examined Boykin. (Id. ¶ 7) At that time, Boykin complained of non-radicular low back pain since the accident of 2002. Dr. Land found Boykin to have 90 degree lumbar flexion, mild presacral tenderness, positive straight leg raises, knee jerks, and ankle jerks. Dr. Land's assessment was lumbar strain. Dr. Land prescribed a bed board for a year, provided an instruction sheet of lumbar stretches, as well as, a prescription for Flexeril 10mg (a muscle relaxant) to be taken three times per day for five days and Feldene 20 mg (a non-steroidal anti-inflammatory) to be taken every morning for three weeks. Dr. Land noted that Boykin should return to the clinic for a follow-up visit in one month. (Id. ¶ 7)

Between May 14, 2004, and June 28, 2004, Boykin filed seven sick call requests complaining of severe pain and discomfort. He was given analgesic balm and Ibuprofen 200mg. The triage nurse also told him to keep his appointment for June 28, 2004. On June 28, 2004, Boykin returned to the medical clinic where Dr. Land examined him. Boykin stated he was completing his stretches but complained of continuing non-radicular low back pain. (Id. ¶ 8) Land's assessment of Boykin's condition continued to be lumbar strain. Dr. Land updated Boykin's "PULHEAT" (which indicates physical capability) to a 2 which is "minimal disease" and his activity to at 2 which is "minor restrictions." Flexeril 10mg was prescribed for an additional two weeks and Dr. Land submitted a request for a lumbar spine x-ray to the Utilization Review Board ("URB"). Boykin was requested

2

to return to the clinic in three months. (Id.)

On June 2, 2004, Dr. Land reviewed the x-ray report performed June 29, 2004. It showed mild degenerative disc changes at L4-5. (Id. ¶ 9).

On July 23, 2004, Boykin was seen by Dr. Land. Boykin complained of continued low back pain with some radiation to the right posterior thigh. He stated he was completing the lumbar stretches more frequently. Dr. Land's assessment was mild degenerative joint disease of the lumbar spine. Dr. Land's plan was to renew the Feldene 200mg to be taken daily for three months, continue Boykin's activity level for one year, and return to clinic as needed. (Id. ¶ 10). On August 9, 2004, after review of the medical cart, the Flexeril 10mg was renewed for an additional two weeks. (Id. ¶ 11).

On August 23, 2004, Dr. Land determined that neither a back specialist nor MRI were indicated at that time. (Id. ¶ 12) On September 20, 2004, Dr. Land examined Boykin in the medical clinic. Boykin complained of on-going low back pain with occasional radiation down right leg and insomnia. Boykin requested to be seen by a back specialist. The examination revealed 90 degree lumbar flexion, normal gait, and blood pressure of 150/103. Dr. Land's assessment was degenerative joint disease of the lumbar spine and mild hypertension. The importance of the lumbar stretches was re-emphasized by Dr. Land. Dr. Land also prescribed Elavil 25mg (for chronic pain) once daily for three months, as well as requiring monthly blood pressure checks. Boykin was to return to clinic in three months. (Id. ¶ 13).

On November 1, 2004, Dr. Land again examined Boykin. He continued to complain of on-going low back pain with right leg involvement and significant insomnia. The examination revealed moderate agitation, 90 degree lumbar flexion, moderate presacral tenderness and a four pound weight gain. Boykin's blood pressure was 150/90. The assessment remained the same, degenerative joint disease of the lumbar spine with poor sleep pattern consistent with fibromyalgia and mild

3

hypertension. Dr. Land planned to discontinue the Feldene and prescribe Hydrochlorothiazide 25mg (for high blood pressure) daily for six months, a lipid panel blood work-up, and an increase to 50mg of the Elavil daily for three months. The follow-up period was shortened for a return clinic visit of six to eight weeks. (Id. ¶ 14) Dr. Land was not involved with Boykin's treatment after November 1, 2004. (Id. ¶ 16)

Summary judgment is appropriate when there exists no genuine issue of any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. *Id.* at 250. Furthermore, although the court is required to draw any inferences from the underlying facts which are favorable to the nonmovant, inferences may be drawn only from facts for which the nonmovant offers Rule 56 proof (rather than mere allegations); and must be reasonable in light of competing inferences to the contrary. *See Sylvia Development Corp. v. Calvert County*, 48 F.3d 810, 817-18 (4th Cir. 1995).

Dr. Land raises the defense of qualified immunity. Therefore, the court must first determine whether he is entitled to qualified immunity. *DiMeglio v. Haines*, 45 F.3d 790, 797-98 (4th Cir. 1995); *see also, Saucier v. Katz*, 533 U.S. 194 (2001). Public officials discretionary duties are free from liability for monetary damages if they can prove their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Bonner v. Anderson*, 81 F.3d 472, 475 (4th Cir. 1996).

The constitutional right at issue here is the Eighth Amendment in the context of medical care. Deliberate indifference to serious medical needs of prisoners constitutes unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104-105

4

(1976). The official, in order to be liable, must have actual knowledge or awareness of the need. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The indifference must be objectively harmful enough to establish a constitutional violation. *Id.* 837-40.

Delay in medical care, with no resulting injury, does not violate the Eighth Amendment. *See Strickler v. Waters*, 989 F.2d 1375, 1380–81 (4th Cir. 1993); *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). A prisoner is not entitled to choose his course of treatment. *See Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975) (per curiam). Likewise, mere negligence in diagnosis or treatment does not state a constitutional claim. *See Estelle*, 429 U.S. at 105–06. The court can rely on the medical affidavits and prison medical records in ruling on a motion for summary judgment. *See Stanley v. Hejirika*, 134 F.3d 629, 637-38 (4th Cir. 1998); *Marshall v. Odom*, 156 F. Supp. 2d 525, 530 (D. Md. 2001); *Bennett v. Reed*, 534 F. Supp. 83, 86 (E.D.N.C. 1981), *aff'd*, 676 F.2d 690 (4th Cir. 1982).

After a full review of the evidence in the record, the court finds that Dr. Land recognized his duty as a medical professional and took the appropriate measures to ensure that Boykin had proper medical care while under his care. Boykin was continually seen by him. Boykin's medical needs were documented, evaluated, and attended to. It appears he was seen for complaints about his back pain numerous times. There is no evidence before the court that the medical care Boykin received was improper. While it is clear that Boykin filed numerous sick call request before and during the time he was seen by Dr. Land, the evidence before the court is that Boykin was seen by Dr. Land. The evidence and arguments presented by Boykin are that he was not pleased with the course of medical treatment and wanted to see a specialist, which is not an actionable claim.[1] The court finds

---

[1] While Boykin argues that Dr. Land was aware of his head injury, Dr. Land's affidavit and the associated medical records do not reflect head complaints. The Administrative Remedy forms and sick call requests provided by Boykin in Docket Entry 51 complain about his back, with the exception of an October 3, 2002, Sick Call which references his back, head, arms, and elbows. The court notes that this was two days after the accident and over a year prior to Dr.

5

that Dr. Land was not deliberately indifferent, no constitutional infringement occurred, and he is cloaked with qualified immunity.

Therefore, defendant's Motion for Summary Judgment is GRANTED, plaintiff's Motion for Summary Judgment is DENIED, and the matter is DISMISSED.

SO ORDERED. This the __9__ day of July 2008.

TERRENCE W. BOYLE
United States District Judge

---

Land's first examination of Boykin.